UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Henry Fiorentino, | ) | CASE NO. 4:20 CV 1431 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| Mark K. Williams, | ) | AND ORDER |
| | ) | |
| Respondent. | ) | |

**Background**

*Pro se* Petitioner Henry Fiorentino is a federal inmate confined at the Federal

Correctional Institution Elkton ("Elkton").  He has filed an Petition for Writ of Habeas Corpus

Under 28 U.S.C. § 2241, seeking to serve the remainder of sentence in home confinement on the

basis the COVID-19 virus. (Doc. No. 1.)

Petitioner contends COVID-19 circumstances present at Elkton violate his rights under

the Eighth Amendment.  He does not represent that he has exhausted his administrative

remedies with respect to his claim for release to home confinement.  Rather, he acknowledges

he has not fully exhausted his remedies with the BOP, contending exhaustion would be futile.

(*See* Doc. No. 1 at 3, ¶7(b); Doc. 1-1- at 2.)

### Standard of Review and Discussion

Federal district courts must conduct an initial review of habeas corpus petitions.  *See* 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011).  A court must deny a petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief" in the district court. Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

The court finds that the Petition must be dismissed without prejudice.

Before a prisoner may seek *habeas corpus* relief under § 2241, he must first exhaust his administrative remedies within the BOP.  *Settle v. Bureau of Prisons*, No. 16-5279, 2017 WL 8159227, at *2 (6th Cir. Sept. 20, 2017).  Where "it is apparent on the face of a § 2241 petition that the petitioner has not exhausted his administrative remedies, a district court may *sua sponte* dismiss the petition without prejudice."  *Id*.

Exhaustion of administrative remedies serves two main purposes: 1) it "protects administrative agency authority," by ensuring that an agency has an opportunity to review and revise its actions before litigation is commenced, which preserves both judicial resources and administrative autonomy; and 2) it promotes efficiency because "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).  In addition, exhaustion of available administrative procedures also ensures that the Court has an adequate record before it to review the agency action in question.  *Woodford*, 548 U.S. at 89.  *See also Detroit Newspaper Agency v. N.L.R.B.*,

286 F.3d 391, 396 (6th Cir. 2002) ("The purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence, to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies.") (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir. 1981) (other citations omitted)).

This court agrees with other district courts that have held it is necessary for federal prisoners to demonstrate they have exhausted their administrative remedies with the BOP before seeking relief due to COVID-19 circumstances, regardless of the statutory basis for their claim. *See, e.g., Cottom v. Williams,* No. 4: 20 CV 574, 2020 WL 2933574 (N.D. Ohio June 3, 2020); *Bronson v. Carvaljal*, Case No. 4: 20-cv-914, 2020 WL 2104542 (N.D. Ohio May 1, 2020). As the court reasoned in *Bronson*, the BOP has procedures in place and is in the best position in the first instance to determine which federal prisoners are suitable for home confinement based on COVID-19 risk factors. *See id.* at **2-3.

The importance of allowing the BOP to consider an inmate's request to release to home confinement based on COVID-19 circumstances is particularly warranted in light of the Sixth Circuit's recent decision in *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In *Wilson*, the Sixth Circuit examined the conditions at Elkton and concluded that a class of medically vulnerable inmates was not likely to succeed on the merits of an Eighth Amendment claim. The Court found that "as of April 22, the BOP responded reasonably to the known, serious risks posed by COVID-19 to petitioners at Elkton." *Id.* at 840. In addition, the Court found that given the BOP's "measures to prevent the spread of COVID-19," its "failure to make robust use of transfer, home confinement, or furlough," including for medically vulnerable

inmates, did not constitute deliberate indifference  *Id.* at 844.

## Conclusion

Accordingly, in that the Petition on its face demonstrates that Petitioner has not exhausted his administrative remedies with respect to his claim, the Petition is denied and this action is dismissed without prejudice in accordance with 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Habeas Corpus Cases.  The court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

July 20, 2020

 /s/ John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE